Haweins, J.,
delivered the opinion of the Court.
It appears from the record in this case, that, at the July Term, 1840, of the Circuit Court for the County of Sullivan, William and George W. Rutledge recovered a *5 judgment by default, against one Peter Hickman, for the sum of $1,200' debt, together with the further sum of $244, as damages, besides costs; and at the same term of said Court, one James Yaughn also recovered a judgment against said Hickman for the sum of $389.21f, and costs, upon which fi. fa’s were issued, and came to the hands of the Sheriff of said County, who levied the same upon the land in controversy as the lands of Hickman, and on the 7th day of November, 1840, sold the same to satisfy said fi.fa’s, when the said William and George W. Rutledge and Yaughn, became the purchasers. On the 23d of November, 1840, said Sheriff, by deed, conveyed the said lands to the purchasers thereof, jointly. On the 16th day of March, 1841, Wm. Rutledge and Vaughn conveyed said lands to complainant and one Merchant. On the 2d day of December, 1841, complainant and Merchant conveyed said lands, together with other property, belonging to complainant, to one Hamilton, in trust, to secure the payment of separate judgments, which one Cowan had recovered against them, as sureties of Hickman, for $2,530, and costs, upon which a fi. fa. had been issued and levied, upon the property of complainant. On the 5th day of October, 1844, Hamilton, the trustee, at the request of Merchant, (complainant having fully paid the debt secured by the trust deed,) re-conveyed the land and other property to complainant.
The defendants are the children and heirs at law of George W. Rutledge, who died on the 12th day of December, 1840, after the making of said conveyance by the Sheriff, and before the making of the deed by Wm. Rutledge and Vaughn to complainant and Merchant; and on the 5th day of March, 1859, brought an action of *6 ejectment, in the Circuit Court of Sullivan County, against complainant, and persons holding- under him, to recover possession of said lands.
This bill is filed to restrain said defendants from prosecuting their said- action of ejectment; and waiving an answer upon oath, charges, among other things, that William Rutledge was the owner of a slave named Will; that George W. Rutledge sold said slave to Hickman, and took the note of Hickman for the purchase money, payable to himself and his brother William; that said note was the foundation of the judgment in their favor against Hickman; that George W. Rutledge had no interest whatever in said judgment, and the same, in equity, belonged to William Rutledge, alone; that complainant and Merchant being judgment creditors, and Merchant being also the personal representative of Hickman, (he having died,) redeemed said land from the purchasers at the execution sale, by paying to William Rutledge and Vaughn, the full amount of the purchase money, with interest and costs, and took from them a deed, as before stated, on the 16th day of March, 1841; that complainant was not only the creditor of said Hickman, but was also largely interested as. his surety, and was, in consequence thereof, forced to redeem said land, in order to save himself; that complainant, either by himself or those claiming under him, has been in the exclusive and adverse possession of said land, ever since the date of the deed from Hamilton, the trustee, to him, to-wit: the 5th day of October, 1844. Complainant insists that his title to the land, though it may have been defective, is perfected by his long continued adverse holding under said deeds.
Respondents admit the consideration paid for the land, *7 under the purchase at the Sheriff’s sale, was the amount of the judgment against Hickman, and insist the slave, Will, belonged to their father, George W., and deny that William and George W. were partners in the land, or in the consideration which formed the foundation of the judgment in their favor against Hickman; and if the note, which constituted the foundation of the judgment, was for the payment of the purchase money for the slave, William Rutledge was only a nominal party to the judgment, and the real beneficial interest therein belonged to their ancestor, George W. Respondents admit complainant has had the use and profits of the land for a long time; and insist, that, inasmuch as the judgment in favor of William and George W. Rutledge was larger than the judgment in favor of Vaughn, and the land was purchased in satisfaction of the judgments, they are entitled to the land in the same proportion.
Respondents also insist that they are not barred from asserting the rights which descended to them from their father, because at the time complainant’s adverse holding began, they were all infants, and at the time of commencing their action of ejectment, one of respondents, to-wit: Annie P., was in her twenty-third year, having attained her majority on the 3d day of April, 1858; and because, under the conveyance from Wm. Rutledge and Vaughn, complainant became a tenant in common with respondents, and as such, his holding was not adverse to their rights but was for their benefit.
After a careful examination of the whole record, we are well satisfied the slave Will was the property of William Rutledge, and had been from the year 1822 up to the time of the sale to Hickman, in 1836, at *8 which time George W. Rutledge sold him, taking Hickman’s note for the purchase money, payable jointly to his brother William and himself, and that the note thus taken, was the foundation of the judgment obtained by them against Hickman, in the Circuit Court, of Sullivan County, to satisfy which, the land in controversy was sold; but it is insisted that, though this be true, the slave was not the only consideration for the note. The note being payable on its face to William and George W.‘ Rutledge, jointly, and the judgment’ being in the name of both, the law raises the, presumption, they were jointly and equally interested; but we think this presumption has been fully met and removed by the facts in the record. William was a single man, sometimes living with his brother George, and at others, elsewhere; was negligent in. his business habits, and much of his business seems to have been transacted by his brother. In speaking of the sale of the slave, George invariably stated, in substance, he had sold him to Hickman without’ William’s consent, and had taken Hickman’s note, payable to William and himself, for the payment of the purchase money. . It does not appear there was any other between Hickman and George W., except such as was settled with his representatives after his death. In speaking of the transaction, he never mentioned any other consideration, for the note than the slave; and one witness states, he understood from George W., in a conversation with him, in 1840, that the slave was the only consideration. The proof shows suit was brought on the note given for the slave; a judgment recovered; to satisfy which the Hickman lands were levied on and sold; and there is nothing *9 in the record showing there ever was but the one judgment in favor of William and George W. Rutledge, or either of them, against Hickman. One witness says he thinks the price of the slave was $725.00, and that he had obtained his information from a record; no such record appears, neither does the witness state,, nor is it attempted to be shown, of what record he was speaking; further than this, the value of the slave, at the time of the sale to Hickman, does not appear, except in the fact that he was a very valuable boy. We are, therefore, constrained to the conclusion, the slave constituted the only consideration for the note. The record, however, discloses the fact, that on the 27th day of July, 1889, Hickman paid George W. Rutledge $300, and took his receipt for the same, which was to be credited on a note given to William and George W. Rutledge. The credit was not placed on the note, and the judgment, being by default, was for the full amount of the note; but on a settlement of the execution with the Sheriff, when the transactions were fresh in the minds of all the parties, this receipt was allowed and credited, and we are clearly satisfied, that if contrary to the statement of George W., that there was no other consideration for the note than the slave Will, there was, in fact, some other; the balance of the note, after the payment of the $300, belonged to William Rutledge. The land in controversy was bid off at the Sheriff’s sale by Yaughn, in the name of himself and William and George W. Rutledge, in satisfaction of the judgments. It is not pretended that any money was paid by the purchasers, except perhaps the costs; and the clear • inference is, the statements of *10 the different amounts paid by tbe different purchasers, were based upon, and alone suggested by, the recitations upon the face of the execution, showing the amount due upon the judgments. The conveyances by the Sheriff, were doubtless made to William and George W. Rutledge and Vaughn, alone, because they were the plaintiffs in the execution, to satisfy which the land had been levied on and sold, without reference to the question as to who might or might not, in equity, be entitled to the proceeds of the sale, or to the land. The defendants’ counsel insist that neither complainant or Merchant were the. judgment creditors of Hickman at the time they redeemed, or attempted to redeem, the land, from the purchasers at the Sheriff’s sale, and therefore, they had no right to redeem the land. Whether they were judgment creditors of Hickman at that time or not, does not clearly appear, and in the view we take of the case, the fact is not material. It is clear that complainant and Merchant, acting under the advice of counsel, and William Rutledge and Vaughn, all believe the right to redeem, was perfect. It is also clear, that under this belief, complainant and Merchant, being creditors of Hickman, and liable for large sums of money, as his sureties, and being desirous to save themselves, paid to William Rutledge and Vaughn, the full amount of the purchase money, and ten per cent, thereon. In consideration of which, William Rutledge and Vaughn conveyed the lands to complainant and Merchant; and although all the parties may have acted under the erroneous impression that the right to redeem was perfect, it can make no difference as to parties before the Court. Whatever interest William Rutledge and Vaughn had in *11 the land passed to complainant and Merchant as purchasers, under their deed of the 16th of March, 1841. These considerations seem to have been according to the understanding of the parties, acted upon and acquiesced in from the date of the Sheriff's deed, the 23d of November, 1840, before the death of George W. Rutledge, up to the time defendants brought their action of ejectment, on •the 5th of March, 1859, a period of more than eighteen years; during nearly all of which time the complainant either by himself or those claiming under him, has been in possession of the land. So far as we can see, George W. Rutledge never had any thing to do with the note, or the judgment, or the land, or set up any claims thereto, or did any thing indicating any interest or ownership in either, after the note was passed into the hands of the clerk for collection. We do not think, however, that an adverse holding under his deeds, was necessary to vest in complainant the title acquired by defendant's ancestor, by virtue of the Sheriff’s deed; and this fact, like many others in the case, is only important for the purpose of showing the understanding of the parties themselves, at the time these several transactions occurred. Whatever may be said as to the policy, it is now well settled by authority, that if William Rutledge paid the whole of the purchase money for the land, or so much, or such interest therein as was conveyed to him and his brother, by the Sheriff’s deed, at the time of the purchase at the Sheriff’s sale, although the purchase was in the name of both, and the conveyance to them jointly, a resulting trust was thereby created in favor of William. Rutledge; and George W. Rutledge, held whatever interest he had thus acquired in the lands in trust for his brother Wil *12 liam. Although a resulting trust is an equitable title, yet, so peculiar is its character, that it is the subject of levy and sale by execution at law; and notwithstanding our Statutes of frauds and registration laws, may be created by parol in the face of positive deeds of conveyance; and when thus created, may be in like manner, proven. Such being the fact in this case, as we are well satisfied, William Rutledge may, at any time after the making of Sheriff’s deed, by invoking the aid of a Court of Chancery, have divested George W. of whatever title he had then acquired in the land. We are also of opinion, the deed made by the Sheriff, and the claim set up by defendants, is a cloud upon complainant’s title, to remove which this bill was properly filed. We are, therefore, of the opinion, complainant is entitled to the relief sought by his bill. Such was the conclusion of the Chancellor, although arrived at for different reasons. The decree of the Chancellor is therefore affirmed. See 1 Hum., 491; 11 Hum., 81; 2 Sneed, 396; 2 Head, 684; 1 Johnson’s Chan. Rep.,. 582; 3 Haywood, 5; 1 Yer., 9.